LABORDE, Judge.
This is an appeal of a flood damage suit instituted by plaintiff-appellant, Ted Hanks, alleging negligence and breach of contract on the part of defendant-appellee, Calcasieu Parish Police Jury, and its insurer, Continental Casualty Company. The trial court found neither negligence nor breach of contract on the part of the Calca-sieu Parish Police Jury. We agree and affirm.
FACTS
In 1977, appellant bought a parcel of land on a canal some two hundred feet (200') from the Calcasieu River near West-lake, Louisiana. He moved a mobile home onto this property and he and his wife took up residence. Mr. Hanks made improvements to the property, most notable being a shed in which he set up a metal fabricating workshop. In May of 1980, the property was inundated by flood waters of the Calcasieu River. The mobile home and the workshop suffered substantial flood damage.
Appellant applied for a Disaster Loan through the United States Small Business Administration (SBA) in the amount of one hundred thousand dollars ($100,000). The initial loan application was turned down. The Hanks then sought and received the assistance of Cecil L. Cain, of the Calcasieu Insurance Agency, in resubmitting the application. On the recommendation of Mr. Cain, the Hanks went to the Calcasieu Parish Administration Building and applied for a development permit from the Department of Licenses and Permits. The federal government requires flood insurance for all SBA loans. Flood insurance may not be obtained without the issuance of a flood zone classification which the Department of Licenses and Permits provides.
On November 14, 1980, Ted Hanks and his wife Caroline Hanks, while at the permit office, spoke to Jackie Bowman, the Parish Permit Coordinator who actually issues the development permits. The Hanks’ permit recites: “A Permit to Remodeling” and is signed J. Bowman, permit officer. The application for the permit recites the proposed use as “Remodeling a Mobile Home into a two story house.” At the bottom of the application, in a space provided “For Office Use Only,” appears “FZ B” (i.e. flood zone “B”). There is no flood zone designation on the permit itself. Appellant paid twenty dollars ($20.00) for the permit.
Appellant and his wife secured the SBA loan just after the 1980 flood. When the *1012 loan funds arrived, Mr. & Mrs. Hanks constructed an entirely new home: a large four (4) bedroom two story brick residence. In May of 1981, flood insurance on the home was obtained through Calcasieu Insurance Company, Mr. Cain’s agency. Later, in 1982, Mrs. Hanks spoke to Pamela Ann Long of Bob McManus Insurance Agency and learned that the house was actually in flood zone “A” rather than “B” as marked on the permit application. Ms. Long further informed Mrs. Hanks that higher premiums would be required unless the house had been elevated to the requisite height. A civil engineer, Mr. William Haymon, was retained to measure the elevation of the house. The elevation of the slab was determined to be 7.5 feet above mean sea level, an inadequate height for a construction in a flood zone “A” area. The Hanks paid the higher premiums and retained the flood insurance.
In December of 1982, the torrents of nature again visited the Hanks. The mischievous tide of the Calcasieu River escaped her banks causing water to enter the Hanks’ residence fourteen to sixteen inches (14"-16") above floor level. They endured the water for four (4) days and when it receded, a disagreeable sludge cleaved to the house. Damage to the property was considerable. It is for this damage that appellant seeks to recover from appellees.
Appellant asserts that the sole proximate cause of the improper flood zone designation was the fault of the Calcasieu Parish Police Jury through its agents in the Department of Licenses and Permits. In turn, appellant asserts that he relied upon the improper flood zone designation to his detriment and, relying solely on the zoning, inadequately elevated the slab to protect his house from flood waters.
Appellant suggests two causes of action which implicate the liability of the Calca-sieu Parish Police Jury: tort and breach of contract. The tort liability arises from the purported negligence of the permit officer in assigning the wrong flood zone designation, thus breaching the duty owed to permit applicants. The breach of contract liability allegedly arises from an implied contract between the Calcasieu Parish Police Jury and the Federal Insurance Administration, making appellant a third party beneficiary thereto. Appellant asserts that the failure of the Parish to properly administer and carry out the obligations under the contract caused appellant’s damage. Specifically, the Parish had a contractual duty to provide appellant with a proper flood zone designation under the implied contract between the Parish of Calcasieu and the Federal Insurance Administration; It is asserted that but for this breach of contract, appellant would have built his house at a higher elevation, or he would not have built a house on the property.
We shall discuss the specifications of error concerning tort liability first, then turn to the specifications of error concerning the alleged stipulation pour autri.
TORT LIABILITY
Appellant’s Specifications Of Error 1-5:
(1) The Trial Court erred as a matter of law in concluding that the duty of the Parish Permit Officer in assigning a flood zone designation was only ministerial.
(2) The Trial Court erred in concluding as a matter of law that the Parish Permit Officer was to make no independent determination of the flood zone designation in the case at bar.
(3) The Trial Court erred as a matter of law in concluding that an applicant has the burden of correcting or challenging the flood zone designation assigned by the Parish Permit Officer.
(4) The Trial Court erred in finding no negligence on the part of the Calca-sieu Parish Police Jury which would be a proximate cause of the damages suffered by plaintiff.
(5) The Trial Court erred in concluding, inter alia, that plaintiff could not rely on the Flood Zone B designation assigned by the Parish and that he should have obtained an independent elevation study.
*1013 Appellant Hanks argues that the trial judge committed error of law. Appel-lees argue that the trial judge correctly resolved the disputed issues of fact. Our Supreme Court ruling in Canter v. Koehring Company, 283 So.2d 716 (La.1973), requires that:
“When there is evidence before the trier of fact which, upon its reasonable evaluation of credibility, furnishes a reasonable factual basis for the trial court’s finding, on review the appellate court should not disturb this factual finding in the absence of manifest error. Stated another way, the reviewing court must give great weight to factual conclusions of the trier of fact; where there is conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable.”
Id. at 724. We find that the trial court was not only not manifestly in error in resolving the factual issues, but that its conclusions, were eminently correct. We agree with the trial judge’s factual conclusions contained in his well written reasons for judgment:
“The Parish employee whose alleged negligence is the basis for plaintiff’s claim, was not held out by the Parish as anyone but a permit officer. Her ministerial duty was simply to mark on the documents the flood zone indicated to her by the applicant. She was to make no independent determination. The zone coloring and markings on the map were very plain. It was as obvious to the applicant as to the permit officer which zone was being designated. Any erroneous interpretation by the officer could and should have been easily corrected by the applicant at that time.
“Prior to constructing the existing residence and other improvements the petitioner was well aware of the potential danger of flooding to which this property was exposed. He had suffered a flood in May 1980 during which water had entered his residence. Despite this he determined to construct a large two story brick home on the same property. He did not first secure adequate information as to possible flood levels and did not determine the elevation of his property or of the proposed improvements. All of this information was readily available.
“The court does not find any negligence on the part of defendant Calcasieu Parish Police Jury which would constitute a proximate cause of damages sustained.”
Appellant draws our attention to Stewart v. Schmieder, 386 So.2d 1351 (La.1980), in support of his contention that the failure of a political subdivision to follow procedures which it sets out for itself in the administration of a regulatory ordinance can constitute fault under La.C.C. art. 2315. We agree with appellant’s appreciation of Stewart, but what is more germane to the case is that the tort liability only arises from a breach of duty owed to a plaintiff by a defendant which causes plaintiff’s damages. Appellant must demonstrate that the permit officer breached a duty owed to appellant in carrying out her assigned duties. Appellant failed to carry this burden.
Black’s Law Dictionary, 1148 (4th ed. 1951) defines “ministerial officer” as “[o]ne whose duties are purely ministerial [a simple and definite duty where nothing is left to discretion] ... requiring obedience to the mandates of superiors and not involving the exercise of judgment or discretion.” Each of the Parish employees testified to the effect that the permit officer, Ms. Bowman, was empowered with no discretion in assigning flood zone classifications.
Ms. Bowman had no recollection of Hanks’ application, but testified as to her normal business practice. Ms. Bowman avers that she had absolutely no discretion in assigning a flood zone classification. The only means at her disposal to determine the location of the property was to have applicants point to their property on the flood zone map. The permit officer would then write down the flood zone classification *1014 according to where the applicant pointed. The color code of the map makes this process simple. If an applicant is unsure as to the exact location of his property or if the property indicated on the map is on the border of flood zones, then the permit officer can not assign a flood zone designation. The permit officer would require a survey before assigning the flood zone. She had no way to verify the location of the property of the applicant, nor was she required to do so. The flood zone map, an exhibit introduced jointly, does not contain township and range lines nor does it contain street names. Appellant’s legal description and municipal address of the property could not help locate the property on the flood zone map.
The parish administrator, Rodney Vincent, in charge of administering the flood insurance program, testified that the applicant himself has the responsibility of locating his property on the flood zone map by pointing to a spot on the map. Mr. Vincent also testified that the applicant has the burden of locating the property precisely on the map. The permit officer, Mr. Vincent confirmed, has no discretion in assigning the flood zone classification.
James Vickers, Director of Planning and Development, testified that the applicant must locate his property on the map, not the permit officer who has no idea of where the property is located.
Mark McMurray, assistant parish administrator, testified that the applicant, in effect, assigns himself the flood zone designation by locating his property on the map. Mr. McMurray was also enlightening as to why the program was set up as it is. He explained that in order to keep the costs of administering the program to an absolute minimum, the applicant himself was required to locate his property on the map; otherwise, professional surveyors and engineers would be required to locate and certify the exact location and elevation of the property in question.
The appellate record supports the trial judge’s finding that Ms. Bowman was merely a ministerial officer. Her duty was simply to mark on the documents the flood zone indicated to her by the applicant. The permit officer was not required to make an independent determination of the flood zone classification. We do not construe the Flood Plain Management Regulations to mandate the use of professional engineers and surveyors when there is no ambiguity as to the location of the property. The permit officer is entitled to presume that the applicant knows where his property is, especially where, as here, when he unhesi-tantly points to the location on the flood zone map.
Appellant asserts that the trial judge erred in holding that “an applicant has the burden of correcting or challenging the flood zone designation assigned by the Parish Permit Officer.” This “holding” must be put in the context of the reasons for judgment:
“The zone coloring and markings on the map were very plain. It was as obvious to the applicant as to the permit officer which zone was being designated. Any erroneous interpretation by the permit officer could and should have been easily corrected by the applicant at that time.”
Implicit in this finding is that the applicant in fact recognized the error as it was being made. We agree that an applicant has the duty to correct egregious errors made by a ministerial officer upon recognition of the error. We also agree that the flood zone map, with a different color for each flood zone classification, makes the flood zone designation simple and obvious. Ms. Bowman testified that she explains the flood zone classifications to all applicants. Appellant asserts that he was not given an explanation, that neither he nor his wife asked any questions and that they had no idea of what the flood zone classification meant. The finder of fact should accept the testimony which is in accord with the surrounding circumstances and common sense, or stated differently, where witnesses differ, the conflicting testimony must be considered in light of the interests of the witnesses, the probability of their testimony, and its consistency with surrounding *1015 circumstances. Crawford v. Bullock, 209 La. 552, 25 So.2d 226, (1946). The trial court obviously believed the permit officer. We will not disturb this finding.
Likewise, we find no error in the trial court’s conclusion that the Calcasieu Parish Police Jury was guilty of no negligence which would be a proximate cause of the damages suffered by appellant.
Appellant suggests that Ms. Bowman was inept and that her lack of concentration caused her to assign the wrong classification to the Hanks. The trial court found that the mechanical process of writing the flood zone classification from the map onto the permit application was too simple to snafu. We conclude that Mr. Hanks failed to carry his burden of proving by a preponderance of evidence that Ms. Bowman incorrectly transcribed the flood zone classification from the map onto the development permit application.
Having found no merit to appellant’s contention of negligence on the part of the permit officer, we need not decide if an applicant can rely exclusively on a flood zone classification to determine the present elevation of a structure. Appellant negligently or otherwise must have pointed to a “B” area on the map which did not correspond to the actual location of his property. We will not allow appellant to lift himself up by his own bootstraps by permitting him to rely on the flood zone designation which he caused to be incorrect.
Assuming arguendo that it was the permit officer’s negligence which caused the incorrect flood zone classification to be assigned, we find no error in the trial court’s conclusion that appellant did not secure adequate information regarding the appropriate elevation before constructing his house.
Appellant suffered a flood at the same location in May of 1980. He checked the water mark on a tree and determined to build the slab higher than the 1980 flood levels. He casually talked to friends around Westlake, La., to determine their elevation without regard to their flood zone classification. Mr. Hanks even stated at trial that using his own judgment he elevated his home to protect himself.
We are not certain that Mr. Hanks relied on the “B” classification at all in determining the elevation of his home. He did not even know what the correct “B” flood zone elevation was:
Q “Well, you built your home at its present elevation on the basis of your best judgment from the experience that you had had in May of 1980 and what you observed from other people. No, isn’t that right, Mr. Hanks?
A “Well, assuming I’m in a B Zone, I built my home where I built it assuming I’d be way above any flood that would ever come along.
Q “Well, did you know what a B elevation was or a B elevation in the vicinity of your house?
A “No, sir; but in talking to people— the number I had talked to never said they ever had water in their place and some of them lived there for thirty, forty years so I assumed if I built my house three foot higher than what their slab was, I would — not three, I guess about two and a half foot higher than their slab, I wouldn’t have any problems.”
Mr. Hanks did not rely on the flood zone “B” classification in elevating his house. It is therefore moot to determine if he could have relied on it exclusively.
We conclude that appellant’s contention of tort liability on behalf of Calcasieu Parish Police Jury is without merit. Ms. Bowman, the Parish permit officer, fulfilled her ministerial duties properly (i.e. no demonstrable negligence). She was not obliged to make an independent determination of the flood zone classification where the applicant apparently had no difficulty pointing to his property on the map. Where an applicant recognizes an egregious error, he should apprise the ministerial officer of the error or bear the consequences. The trial court’s finding of no negligence on the part of the Calcasieu Parish Police Jury is reasonable and is supported by ample evi *1016 dence. The question of whether an applicant can rely exclusively on the flood zone designation assigned by the Parish need not be addressed since the wrong designation was issued with no fault attributable to the Parish. But more specifically, the question is moot as we find Mr. Hanks did not in fact rely on the “B” designation in determining the elevation of his house.
BREACH OF CONTRACT LIABILITY
Specifications of Error 6 & 7 detail alleged errors made by the trial court in dismissing appellant’s cause of action under the theory of breach of contract.
Appellant asserts that the Calcasieu Parish Police Jury (by enacting Ordinance No. 1777) and the federal government (by enacting the National Flood Insurance Program) entered into a contract in order to provide floodplain management to citizens of Calcasieu Parish. As a result of the contract, citizens of Calcasieu Parish, specifically the Hanks, obtained the status of third party beneficiaries.
Although several purposes for the enactment of Ordinance No. 1777 have been recited by appellant, we find that it is unrealistic to believe that its basic purpose is anything other than making subsidized flood insurance available to residents of Calcasieu Parish. We are unable to detect a breach, assuming that a contract in fact exists. We adopt as our own the trial court’s reasons for judgment and affirm the dismissal of appellant’s cause of action under the theory of breach of contract.
“Plaintiff has also claimed, in a second supplemental petition, that defendant failed to comply with its contractual obligations to the Federal Insurance Administration, to the detriment of petitioner. The whole purpose of the program was to provide a vehicle so that subsidized flood insurance might be available to the residents of Calcasieu Parish. Guidelines established by Federal agencies were followed in drafting and adopting a Parish Ordinance and in setting up administrative machinery. That this was done successfully is established by the fact that Mr. Hanks was able to and did purchase flood insurance coverage prior to the disastrous 1982 flood. He made a claim under this policy and it was honored. The court finds no merit in this contention.”
In rejecting appellant’s specifications of error 1-7, finding no tort or contractual liability on behalf of the Calcasieu Parish Police Jury, we need not discuss appellant’s request for damages in specification number 8.
For the above and foregoing reasons, the judgment of the trial court is affirmed. Costs of this appeal are assessed to appellant, Ted Hanks.
AFFIRMED.